# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00187-CV

**Power Resource Group, Inc., Appellant**

v.

**Public Utility Commission of Texas and Texas-New Mexico Power Company, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. 99-06000, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING

In this appeal, we must determine whether the Public Utility Commission of Texas erred in interpreting its substantive rule 23.66, governing the obligation of electric utilities to purchase energy and capacity from qualifying facilities.[1] Power Resource Group, Inc., challenges the Commission's refusal to find a requirement in the rule imposing upon utilities an obligation to enter into contracts offered by qualifying facilities incapable of providing energy or capacity within ninety days of such offer.

In Texas, the primary enforcer of the Public Utility Regulatory Policies Act of 1978 ("PURPA"), a federal statute enacted in part to encourage development of cogeneration facilities as an alternative source of energy, is the Commission. The Commission is authorized to enact rules

---

[1] "Qualifying facility" ("QF") means a qualifying small power production facility or a qualifying cogeneration facility as defined by sections (17)(C) and (18)(B) of the Federal Power Act, 16 U.S.C. § 796(17)(C), (18)(B) (1994). Tex. Gov't Code Ann. § 2302.001 (West 2000).

imposing an obligation upon a utility to purchase power from a QF. *See* Tex. Util. Code Ann. § 11.002(c) (West Supp. 2002). As contemplated by PURPA, the Commission enacted rule 23.66(d)(1)(C) to regulate the relationship between utilities and QFs. In implementing and interpreting its rule, then, the Commission determined that it could best serve the purposes of PURPA by imposing an obligation upon a utility to purchase energy—but not contract for it—within ninety days of notification of the availability of such energy from a QF. In so doing, the Commission struck a balance between insuring a market for QFs by encouraging the development of energy and requiring utilities to purchase that energy.

The question on appeal, then, is whether the Commission misinterpreted the rule or it is otherwise invalid. In six points of error, Power Resource contests the district court's judgment (i) affirming the Commission's interpretation of rule 23.66 and (ii) granting appellees'[2] motions for summary judgment. Holding the Commission's interpretation of rule 23.66 was reasonable and Power Resource's claims to be without merit, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Power Resource and Texas-New Mexico Power ("TNMP") began contract negotiations in early 1996 for Power Resource to supply energy and capacity to TNMP from a proposed cogeneration facility to be built in Lewisville, Texas. In September 1996, while still negotiating with TNMP, Power Resource filed for and received a self-certification number from the

---

[2]     We refer to the Commission and Texas-New Mexico Power Company collectively as appellees unless we refer to a party in its individual capacity.

Federal Energy Regulatory Commission ("FERC") for the Lewisville project.[3] Relying on this certification, Power Resource demanded that TNMP sign a long-term purchase agreement. Negotiations between Power Resource and TNMP continued until January 2, 1998, when Power Resource made its "last firm offer." Contract negotiations ended when TNMP rejected Power Resource's proposal.

Power Resource filed a petition with the Commission requesting the Commission to force TNMP to contract with Power Resource for the purchase of energy and capacity from its proposed Lewisville project. When TNMP filed a motion to dismiss, the Commission referred the matter to the State Office of Administrative Hearings. After an evidentiary hearing, the administrative law judge denied TNMP's motion, concluding that rule "23.66(d)(1)(C) does not negate TNMP's duty to negotiate and contract with [Power Resource] based on [Power Resource]'s inability to deliver power within 90 days." TNMP appealed the ALJ's ruling to the Commission, which issued an order reversing that determination, and dismissing Power Resource's contract and fraud claims against TNMP. The Commission concluded that TNMP was not obligated under rule 23.66 to contract with Power Resource to purchase power and capacity from the Lewisville project because Power Resource could not deliver power or capacity from the Lewisville project within ninety days after Power Resource's January 1998 offer. Power Resource then filed suit in district court appealing the Commission's final order. Power Resource now appeals the district court's judgment granting

---

[3] The requirements for self-certification are governed by FERC regulations. *See* 18 C.F.R. § 292.207(a) (2001).

3

appellees' motions for summary judgment and affirming the Commission's order dismissing Power Resource's claims against TNMP.

## DISCUSSION

By its third point of error, Power Resource challenges the Commission's interpretation of rule 23.66 as *ultra vires* and invalid. Power Resource agrees that this appeal primarily concerns when, with respect to an unbuilt QF in Texas, a utility incurs a legally enforceable obligation to purchase energy. That determination turns on the correct interpretation of the language in rule 23.66(d)(1)(C),[4] requiring each electric utility to "purchase energy and capacity from a qualifying facility . . . within 90 days of being notified by the qualifying facility that such energy is or will be available . . . ." 16 Tex. Admin. Code § 23.66(d)(1)(C) (1999). Power Resource contends that, merely by obtaining QF status and tendering a self-imposed commitment to provide energy, a cogeneration facility creates a legally enforceable obligation by which it can unilaterally compel a utility to contract for the QF's future energy production. The Commission responds that the rule contemplates both that the QF (i) notify the utility of its intent to invoke its statutory right to demand the utility purchase its energy and (ii) have the capacity to make energy available to the utility within ninety days of such notification.

---

[4]  The parties agree that the relevant rule governing this appeal is rule 23.66(d)(1)(C), as amended in April 1985. *See* 10 Tex. Reg. 1414, 1415 (1985). The parties also stipulate that the April 1985 version of the rule never appeared in the Texas Administrative Code. Although we rely on the rule as it appears in the *Texas Register*, we cite to the Texas Administrative Code. Subsequent to this action, rule 23.66 was repealed and replaced in 1999 with rule 25.242. *See* 23 Tex. Reg. 11521 (1998), *adopted* 24 Tex. Reg. 3846 (1999) (codified at 16 Tex. Admin. Code § 25.242).

4

Although not binding, the interpretation of a regulation by the administrative agency charged with its enforcement is entitled to great weight. *See State v. Public Util. Comm'n*, 883 S.W.2d 190, 196 (Tex. 1994) (citing *Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994), and *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993)). We necessarily look to the administrative construction of the rule in question and determine "whether the administrative interpretation 'is plainly erroneous or inconsistent with the regulation.'" *Public Util. Comm'n v. Gulf States Utils. Comm'n*, 809 S.W.2d 201, 207 (Tex. 1991) (citing *United States v. Larionoff*, 431 U.S. 864, 872 (1977) (quoting *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414 (1945))). Thus, absent evidence that the Commission is disregarding the plain language of its rules, we look to its expertise in calibrating the various technical aspects of this complex statutory scheme and in integrating the various policy considerations of a transitioning industry. The agency responsible for regulating an industry must be afforded sufficient flexibility to determine and carry out its mandate. *See Cities for Fair Util. Rates v. Public Util. Comm'n*, 924 S.W.2d 933, 942 (Tex. 1996). We will reverse the Commission when it fails to follow the clear, unambiguous language of its own regulations, that is, when its actions are arbitrary and capricious. *Id.* (citing *Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976), and *Ex parte Roloff*, 510 S.W.2d 913, 915 (Tex. 1974)).

Subsection (1)(C) specifies the circumstances under which an electric utility is required to *purchase* energy and capacity. *See* 16 Tex. Admin. Code § 23.66(d)(1)(C). The rule states,

> Each electric utility shall *purchase* energy and capacity from a qualifying facility with a design capacity of 100 Kw or more within 90 days of being notified by the qualifying facility that such energy and capacity are or will be available, provided that the electric utility has sufficient interconnection facilities available. If an agreement to *purchase* energy and capacity is not reached within 90 days after the qualifying

5

facility provides such notification, the agreement, if and when achieved, shall bear a retroactive effective date for the *purchase* of energy (and capacity) delivered to the electric utility correspondent with the 90th day following such notice. . . . If an agreement to *purchase* energy and capacity is not reached upon completion of construction of the interconnection facilities or 90 days after notification by the qualifying facility that such energy and capacity are or will be available, the agreement, if and when achieved, shall bear a retroactive effective date for the *purchase* of energy and capacity delivered to the electric utility correspondent with the time of interconnection or the 90th day, whichever is later. Nothing in this subsection shall be construed in such a manner so as to preclude a qualifying facility from notifying and *contracting* for energy and/or capacity with a utility prior to 90 days before delivery of such energy and/or capacity.

*Id.* (emphasis added). According to the Commission, the requirement in the rule to *purchase* is not the same as a requirement to *contract*. The Commission asserts that its interpretation is consistent with the plain language of the rule and that an alternative reading would render the rule's ninety-day notification provision meaningless.

Power Resource contends that, under a correct interpretation of the rule, a utility must contract to purchase energy and capacity within ninety days after receiving the QF's self-imposed commitment to deliver such power, regardless of whether the QF is capable of delivering the power within that period. This is so, according to Power Resource, because: (i) FERC regulations require utilities to "offer to purchase available electric energy from cogeneration and small power production facilities which obtain qualifying status under" PURPA; (ii) rule 23.66 requires utilities to purchase energy or capacity from a QF within ninety days of being notified by the QF that such energy or capacity is or will be available; and (iii) any agreement reached after the expiration of ninety days will bear an effective date of the ninetieth day following notice, by implication, a utility is required to contract with a QF within ninety days of receiving such notice. Although the standard of review

6

requires us to determine whether the Commission's interpretation is reasonable, not whether Power Resource's interpretation is more plausible, we address Power Resource's contentions because we agree with its position that "[o]nly one of the[ parties'] interpretations of Rule 23.66(d)(1)(C) is consistent with both the language of the Rule itself and FERC's regulations."

Power Resource first contends that, because facility construction and operation are not prerequisites to obtaining QF status, neither are they impediments to enforcing PURPA obligations. An unbuilt QF may very well be entitled to certain protections afforded by PURPA. However, nothing in PURPA requires a utility to contract with a QF merely because it obtains QF status. Congress did not intend the incentives of PURPA to create a risk-free environment.

Under federal law, a utility's obligation to purchase arises only for "energy and capacity *which is made available* from a qualifying facility." 18 C.F.R. § 292.303(a) (2001) (emphasis added). Regulation 393.304, entitled "Purchases 'as available' or pursuant to a legally enforceable obligation," provides:

Each qualifying facility shall have the option either:

(1) To provide energy as the qualifying facility determines such energy to be *available* for such purchases, in which case the rates for such *purchases* shall be based on the purchasing utility's avoided costs calculated at the time of delivery; or

(2) To provide energy or capacity pursuant to a *legally enforceable obligation* for the delivery of energy or capacity over a specified term . . . .

*Id.* § 292.304(d) (emphasis added). Power Resource argues that, pursuant to FERC regulations, "the term 'legally enforceable obligation' unquestionably represents a 'vehicle' by which a utility can be

7

required to purchase QF power." Power Resource further claims that merely obtaining QF status and tendering a self-imposed commitment to supply power creates such a legally enforceable obligation.

FERC has expressly delegated to the states the authority to determine when a legally enforceable obligation to purchase power arises: "It is up to the States, not [FERC], to determine the specific parameters of individual QF power purchase agreements, including the date at which a legally enforceable obligation is incurred under State law." *Metropolitan Edison Co.*, 72 FERC 61,105, 61,050 (July 6, 1995). Accepting Power Resource's interpretation would lead to the anomalous result of allowing an unbuilt QF to prevent utilities from contracting with a completed QF simply by self-certifying and being the first to offer power for sale. If this were the case, there would be less incentive to timely complete the QF's construction. Each provision of a statute must be read within the context of the entire statutory scheme. *See Bridgestone/Firestone, Inc. v. Glyn-Jones*, 878 S.W.2d 132, 133 (Tex. 1994); *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978) ("One provision will not be given a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction if standing alone.").

PURPA was designed to insure a market for readily *available* power, not to prematurely commit utilities to long-term power contracts. Although a utility can be compelled to purchase energy from a QF upon the creation of a legally enforceable obligation, such obligation is not created, as Power Resource contends, pursuant to FERC regulations. Pursuant to FERC regulation 292.203, to qualify as a QF, a cogeneration facility must meet all applicable operating and efficiency standards specified in regulation 292.205 (a) and (b), and meet the ownership criteria specified in regulation 292.206. 18 C.F.R. § 292.203(b)(1), (2). In contrast, the self-certification

8

procedure only requires the applying facility to file its application with the Commission, and concurrently serve on each electric utility to which it expects to provide power, and the state regulatory authority of each state where the facility and each affected utility is located, a notice of self-certification. *See id.* § 292.207(a)(ii). A legally enforceable obligation does not arise simply because a company receives a self-certification number for an unbuilt facility, and then demands that a utility contract to accept its power in the future. Accordingly, we reject Power Resource's first contention.

Power Resource next argues that, because rule 23.66 requires utilities to purchase energy and capacity no later than ninety days after being notified that such energy and capacity is or will be available, under state law, that means "the utility must *contract* to purchase QF power within 90 days of receiving a self-imposed commitment from the QF that the QF will deliver and capacity to the utility at *some future date*." (Emphasis added.) Power Resource further contends that the retroactive effective date provision supports its reading. *See* 16 Tex. Admin. Code § 23.66(d)(1)(C). That provision states:

> If an agreement to purchase energy and capacity is not reached within 90 days after the qualifying facility provides . . . notification [that it is a qualifying facility], the agreement, if and when achieved, shall bear a retroactive effective date for the purchase of energy (and capacity) delivered to the electric utility correspondent with the 90th day following such notice.

*Id.*

This language does not support Power Resource's proposed interpretation. When construing statutes, the plain meaning of words is to be given effect whenever practicable. *See* Tex. Gov't Code Ann. § 311.021(2) (West 1998); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473,

9

479 (Tex. 2001) ("A basic rule of statutory construction is that we enforce the plain meaning of an unambiguous statute."). The rule's first sentence specifies when "each electric utility shall *purchase* energy and capacity," the last sentence specifies that "*contracting* for energy and/or capacity" may occur at any time, including prior to ninety days. To read the rule as Power Resource suggests would give "purchase" the same meaning as "contract." We must presume that every word in a statute is used for a purpose and give effect to each sentence, clause and word if reasonable and possible. *Texas Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 593 (Tex. 2000) (quoting *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963)). Power Resource's interpretation runs afoul of this principle. Additionally, Power Resource's argument concerning the retroactive effective date provision is without merit because the language relating to an agreement "*if and when* achieved," contemplates a *possible*, not a mandatory obligation. Power Resource fails to demonstrate that the Commission's interpretation of its own rule is unreasonable. We hold the Commission's interpretation of rule 23.66 follows the rule's plain language and that the Commission did not err in rejecting Power Resource's proposed interpretation of the rule.

Finally, Power Resource asserts that, if the Commission's interpretation is correct, rule 23.66 is preempted by federal law because it impedes the development of QFs. Because no federal regulation imposes a ninety-day requirement, it contends that the Commission's interpretation of rule 23.66 both conflicts with federal law and subverts it "by imposing additional, oppressive conditions upon" QFs. Under the Supremacy Clause of the United States Constitution, a state law or regulation is preempted and "without effect" only if it conflicts with federal law. U.S. Const. art. VI, cl. 2.

10

In support of its preemption argument, Power Resource cites FERC regulation 292.304. Regulation 292.304 provides in pertinent part:

Each qualifying facility shall have the option []:

(2) To provide energy or capacity pursuant to a legally enforceable obligation for the delivery of energy or capacity over a specified term, in which case the rates for such purchases shall, at the option of the qualifying facility exercised prior to the beginning of the specified term . . . .

18 C.F.R. § 292.304(d)(2). Power Resource contends that, under the Commission's interpretation of rule 23.66(d)(1)(C), a qualifying facility could not incur a legally enforceable obligation under this provision without the capacity to deliver energy within ninety days of notifying a utility of its QF status. This argument erroneously assumes that a legally enforceable obligation arises only when a utility is compelled to contract with a QF. The last sentence in rule 23.66(d)(1)(C) contemplates that QFs and utilities may enter into bilateral agreements for the purchase of energy prior to the QF's ability to supply power. Thus, contrary to Power Resource's assertion, a legally enforceable obligation could arise between a QF and utility if, at any time, even prior to the ninetieth day before the QF could supply power, the parties entered into a bilateral contract. For these reasons, we hold the Commission's interpretation is not inconsistent with, and therefore not preempted by, federal law.

Because we hold that rule 23.66 is not preempted by federal law and the Commission was within its authority to determine that a legally enforceable obligation does not exist unless the qualifying facility is capable of providing energy within ninety days of notifying the utility of its qualifying facility status, we overrule Power Resource's third point of error. Because of our

11

disposition of this point of error, we need not address Power Resource's points of error one, two, four, and five.[5]  *See* Tex. R. App. P. 47.1.

By its sixth point of error, Power Resource contends the district court erred in granting TNMP's motion for summary judgment on Power Resource's contract[6] and fraud claims. Power Resource contends that TNMP committed fraud because it represented that it would contract with Power Resource for energy when, in fact, TNMP had no intention of entering into such a contract with Power Resource.  An actionable fraud claim requires proof that (1) a material misrepresentation was made, (2) the speaker knew it was false when made or made it recklessly without any knowledge of its truth, (3) the representation was made with the intent that it should be acted upon by the party, and (4) the party acted in reliance upon the representation to its damage. *See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). A future promise to act constitutes fraud only when made with the intention, design and purpose of deceiving—a promise made with no intention of performing the act.  *Id.*  To prevail, a plaintiff must establish that the promise was false at the time it was made. *Schindler v. Austwell Farmers Coop.*, 841 S.W.2d 853, 854 (Tex. 1992); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986); *Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex. 1971).  Although a party's intent is determined at the time the party made the representation, it may be inferred from the party's acts subsequent to the representation. *See Spoljaric*, 708 S.W.2d at 434.  However, failure to perform,

---

    [5]    Although Power Resource lists ten points of error, they brief only six.  The remaining four points appear to be subsumed within other points of error.

    [6]    Because Power Resource and TNMP never entered into a contract and any "breach" turns upon the disposition of the administrative appeal, we conclude that there is no legally enforceable obligation for TNMP to have breached.

standing alone, is not evidence of the promisor's intent not to perform when the promise was made, although that fact is a circumstance to be considered, with others, to establish intent. *Id.*; *see also Schindler*, 841 S.W.2d at 854.

The standard for reviewing a motion for summary judgment is well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When a defendant seeks to obtain summary judgment based on a plaintiff's inability to prove its case, the defendant must conclusively disprove at least one element of each of the plaintiff's causes of action. *See Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991).

In its motion for summary judgment, TNMP asserted that there was no actionable misrepresentation and no reasonable reliance on any representations made by TNMP as a matter of law. In support of its summary judgment motion, TNMP offered the affidavit of its president and chief executive officer, Kevern Joyce, explaining TNMP's reasons for negotiating, but not contracting, with Power Resource. Although Power Resource contends that the affidavit by Mark Wilson, Power Resource's president, supports its fraud claims, none of Joyce's statements are controverted by Power Resource. Instead, Wilson's statements are conclusory and nonspecific. *See Life Ins. Co. of Va. v. Gar-Dal, Inc.*, 570 S.W.2d 378, 381-82 (Tex. 1978). Further, Power Resource fails to offer a single specific misrepresentation made by TNMP. That TNMP ultimately

13

decided not to contract with Power Resource is alone insufficient to establish that TNMP never intended to contract with Power Resource. *Spoljaric*, 708 S.W.2d at 434. Because Power Resource offers nothing to controvert TNMP's summary judgment proof, we hold TNMP affirmatively negated at least one essential element of Power Resource's fraud claim. We overrule point of error six.

## CONCLUSION

We hold the Commission's interpretation of rule 23.66(d) is reasonable and not preempted by federal law and that the Commission did not act arbitrarily or capriciously in refusing to compel TNMP to contract with Power Resource. Having overruled Power Resource's points of error, we affirm the district court's judgment granting appellees' motions for summary judgment and affirming the Commission's order dismissing Power Resource's claims for fraud against TNMP.

Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   January 10, 2002

Publish

14