# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-04-00574-CV
---

**Bexar Metropolitan Water District, Appellant**

**v.**

**Texas Commission on Environmental Quality, City of Bulverde
and Guadalupe-Blanco River Authority, Appellees**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. GV302775, HONORABLE DARLENE BYRNE, JUDGE PRESIDING
---

## O P I N I O N

For an applicant to obtain a certificate of public convenience and necessity for water utility service, the Texas Commission on Environmental Quality must "ensure" that the applicant (i) possesses the financial, managerial, and technical capability to provide continuous and adequate service, (ii) is capable of providing drinking water that meets specified statutory requirements, and (iii) has access to an adequate supply of water. Tex. Water Code Ann. § 13.241(a)-(b) (West 2000). The question presented is whether a municipality as applicant may demonstrate this capability through contracts and interlocal agreements with a river authority that owns or operates water distribution and treatment systems throughout a river basin. Bexar Metropolitan Water District ("BexarMet") sought judicial review of the Commission's approval of the City of Bulverde's application for a certificate, after the Commission issued the certificate against the recommendation

of an administrative law judge ("ALJ"). The district court denied BexarMet's claims and affirmed the Commission's order.

In four issues, BexarMet appeals, contending that, by issuing a certificate to Bulverde, the Commission violated the water code and its own rules. We hold that the Commission acted within its authority when it granted a certificate to Bulverde. We therefore affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 28, 2000, the City of Bulverde, a new city located in a prime growth corridor north of San Antonio, filed an application for a certificate to provide water utility service in western Comal County. In addition to its incorporated limits, Bulverde sought to serve its extra-territorial jurisdiction and some outlying areas. To provide a firm supply of treated water, Bulverde contracted with Guadalupe-Blanco River Authority ("GBRA") to join the Western Canyon Lake Treated Water Supply Project. The operating agreement between GBRA and Bulverde obligates GBRA to design, construct, finance, operate and maintain the water distribution system to provide treated water on behalf of Bulverde. BexarMet, a water conservation district and municipal corporation created by the Texas Legislature in 1945, requested a hearing on Bulverde's application, and on November 3, 2000, BexarMet filed an application to amend its certificate to provide water utility service to an area that overlapped with Bulverde's requested service area.

After consolidating the two applications, a three-day hearing on the merits commenced on June 11, 2002, before an ALJ. Specifically, the ALJ found that:

2

- Bulverde, by itself, does not possess the financial, managerial, and technical capability to provide continuous and adequate service;

- The Bulverde/GBRA contracts reveal an arms-length relationship with separate rights and duties between Bulverde and GBRA;

- A non-certificate holder in GBRA's position would not be subject to the same enforcement authority from the Commission or the attorney general as a certificate holder would be;

- Bulverde failed to adequately demonstrate that it would not be feasible to satisfy some or all of its water needs from existing utilities;

- Bulverde did satisfy some of the statutory requirements for receiving a certificate if GBRA's capabilities are also taken into consideration;

- In the long run, Bulverde's access through GBRA to Canyon Lake water is superior to BexarMet's projected water supplies;

- Based on GBRA's long history of successfully providing drinking water to customers in several areas, Bulverde will be able to provide drinking water meeting applicable legal requirements;

- Bulverde will have sufficient funds to pay its $23,000 to $27,000 per year obligation for its right to 400 acre-feet of water from GBRA; and

- Granting the certificate would have a positive effect on Bulverde by helping to assure a long-term water supply to its residents, thereby promoting development, adding to its economic base, and attracting businesses.

Despite finding that Bulverde proposed the most reliable long-range water source and would have satisfied the statutory requirements for a certificate if its contractual relationship with GBRA were considered, the ALJ recommended that its application be denied. The ALJ further recommended that the BexarMet application be approved in part.

After considering the ALJ's proposal for decision and the arguments presented at a hearing, the Commission rejected his recommendation. The Commission disagreed with the ALJ

3

on the threshold question of whether Bulverde could acquire the requisite capabilities through contracts with GBRA, and found that the ALJ's conclusion was not founded in law or based on the policy of the Commission. The Commission further determined that Bulverde had the capability to provide continuous and adequate service through its contracts with GBRA and had the more reliable water supply for the long term needs of the requested service area. It unanimously approved Bulverde's application, denied BexarMet's, and amended the order to reflect those determinations.

BexarMet filed suit for judicial review of the Commission's decision. The district court denied BexarMet's request to remand the matter for additional evidence, dismissed BexarMet's request for a temporary injunction as moot, and affirmed the Commission's order. This appeal ensued.

## ANALYSIS

### *The Controversy*

BexarMet contends that water code section 13.241(a) requires the applicant itself to possess the necessary capabilities to obtain a water service certificate, and urges that Bulverde's reliance on GBRA to satisfy the requirements of the statute is not allowed by the water code. *See id.* § 13.241(a). Alternatively, BexarMet argues that if section 13.241(a) were interpreted to allow applicants to acquire the requisite capabilities through contract, the agreement between Bulverde and GBRA does not grant Bulverde sufficient control to satisfy the "continuous and adequate" service requirement. *See id.* BexarMet further contends that the Commission abused its discretion by failing to observe its own regulations requiring an applicant to prove that consolidation with another existing utility in the area is not economically feasible.

4

The Commission responds that it correctly construed section 13.241(a) to allow contracts to satisfy the water code's requirements for certification and that Bulverde and GBRA created an adequate contractual framework to accomplish this goal. The Commission further responds that Bulverde's application fulfilled state policy objectives regarding regionalization.

We are therefore asked whether a municipality, after assessing its internal capabilities and finding them inadequate, can acquire the capability to provide water service through contracts and interlocal agreements with a river authority.

***Standard of Review***

We review issues of statutory construction *de novo*. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). Here, we are asked to construe section 13.241(a) of the water code, concerning the granting of certificates by the Commission. Construction of a statute by the administrative agency charged with its enforcement is entitled to great weight by reviewing courts. *State v. Public Util. Comm'n*, 883 S.W.2d 190, 196 (Tex. 1994) (citing *Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994)).

We review the Commission's determination that Bulverde's certificate application satisfied the regulatory standards and was superior to BexarMet's application under the substantial evidence standard. *See* Tex. Gov't Code Ann. § 2001.174 (West 2000). When a court is applying the substantial evidence standard of review to an agency decision, the issue for the reviewing court is not whether the agency's decision was correct, but whether the record demonstrates some reasonable basis for the agency's action. *Central Power & Light Co. v. Public Util. Comm'n*, 36 S.W.3d 547, 557 (Tex. App.—Austin 2000, pet. denied). The test here is primarily one of

5

rationality. If the Commission based its order on substantial relevant evidence and it has made no clear error of judgment, we are not authorized to overturn that order.

We also use the substantial evidence standard to determine whether the Commission satisfied its own regionalization rules. An agency's interpretation of its own regulations is entitled to deference by the courts, even though that interpretation is not binding. *Public Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991); *Lone Star Salt Water Disposal Co. v. Railroad Comm'n*, 800 S.W.2d 924, 929 (Tex. App.—Austin 1990, no writ). We will reverse the Commission when it fails to follow the clear, unambiguous language of its own regulations, that is, when its actions are arbitrary and capricious. *Power Res. Group, Inc. v. Public Util. Comm'n*, 73 S.W.3d 354, 357 (Tex. App.—Austin 2002, pet. denied). Thus, absent evidence that the Commission is disregarding the plain language of its rules, we look to its expertise in calibrating various policy considerations. *Id.* The agency responsible for regulating an industry must be afforded sufficient flexibility to determine and carry out its clear legislative mandate. *Id.*

***Interpreting Water Code Section 13.241(a)***

Section 13.241(a) of the water code governs the granting of certificates. Tex. Water Code Ann. § 13.241(a). It states, "In determining whether to grant a certificate . . . the commission shall ensure that the applicant possesses the financial, managerial and technical capability to provide continuous and adequate service." *Id.* We look first to the plain and common meaning of the statute's words. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999) (citing *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998)).

6

***"In determining whether to grant a certificate . . . the Commission shall ensure"***

"[E]very word in a statute is presumed to have been used for a purpose, and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible." *Texas Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 593 (Tex. 2000) (citing *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963)). Likewise, every word excluded from the statute must be presumed to have been excluded for a purpose. *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)).

The opening words of this section are words of discretion. The phrases, "[i]n determining whether to grant a certificate," and "the commission shall ensure," give the Commission broad discretion in characterizing the requisite capabilities, and in determining which candidates for certificates meet the statutory requirements. The legislature could have limited the Commission's discretion by using language that appears later in the same section, but it chose not to do so. Specifically, section 13.241(e) requires the Commission to develop "by rule . . . a standardized method," while section 13.241(d) states what "the applicant must demonstrate." Tex. Water Code Ann. § 13.241(d)-(e) (West 2000). Thus, the language makes clear that the legislature vested discretion in the Commission to evaluate the competing interests and their various capabilities.

***"The applicant possesses"***

The term "possess" is defined neither in the statute nor in the Commission's regulations.[1] While section 13.241 of the water code requires the Commission to ensure that the

---

[1] When the legislature has failed to define a specific word in a statute, courts apply its ordinary meaning. Tex. Gov't Code Ann. § 312.002(a) (West 2005). Black's Law Dictionary defines "possess" as "to have in one's actual control." Black's Law Dictionary 1183 (7th ed., 1999).

certificate applicant possesses certain capabilities, it does not require the applicant to own the facilities. This is consistent with the water code's definition of "retail public utility" as a "municipality [or] political subdivision . . . operating, maintaining, or controlling in this state facilities for providing potable water service . . . ." *Id.* § 13.002(19) (West 2000). We agree with Commissioner White's statement at the hearing that, "[o]wnership is not something legally required, which may be the only thing absent in Bulverde's application on the first criteria."

### Companion Statutes

The determination that a municipality may demonstrate the required capabilities through contracts and interlocal agreements with a river authority is also consistent with the Interlocal Cooperation Act. *See* Tex. Gov't Code Ann. § 791.026 (West 2004). Designed by the legislature "to increase the efficiency and effectiveness of local governments by authorizing them to contract, to the greatest possible extent, with . . . agencies of the state," the statute specifically contemplates contracts for water supply facilities. *Id.* §§ 791.001, .026 (West 2004). Section 791.026(a) states in pertinent part, "A municipality, district, or river authority of this state may contract with another municipality, district, or river authority of this state to obtain or provide part or all of: (1) water supply or wastewater treatment facilities . . . ." *Id.* § 791.026(a).

---

It defines "control" as "the direct or indirect power to direct the management and policies of a person or entity whether . . . by contract or otherwise." *Id.* at 330. According to the ordinary meaning of the terms, then, Bulverde possesses the necessary capabilities to provide continuous and adequate service through its contracts with the GBRA.

To be sure, the Interlocal Cooperation Act does not supersede the specific requirements for certificate applicants. It makes clear, however, the legislature's intent to allow municipalities to obtain the required capabilities to operate and construct water systems through contracts with river authorities and its belief that these contracts increase the efficiency and effectiveness of local government.

### Continuous and Adequate Service

Before granting a certificate, the statute requires the Commission to ensure that the proposed system possesses "the financial, managerial, and technical capability to provide continuous and adequate service" to its customers. Therefore, the requirement of "continuous and adequate" in section 13.241(a) is the standard to which Bulverde's capabilities must rise before the Commission may grant it a certificate. The statutory "continuous and adequate" standard for the actual provision of water service arises elsewhere in the code, apart from the requirements for receiving a certificate. *See* Tex. Water Code Ann. § 13.250 (West 2000). This is consistent with the notion that the granting of a certificate is not an indication that the Commission approves of all aspects of a particular plan, nor does it imply that a carrier is prepared to begin service at once. The purpose of certification is to provide for a rational distribution of public utility services within defined geographical areas. *See* Bradley Toben, *Certificates of Convenience and Necessity Under the Texas Public Utility Regulation Act*, 28 Baylor L. Rev. 1115, 1116 (1976). Therefore, as its name implies, the certificate is intended to be a "necessary" but not a sufficient condition of operation.

There is substantial evidence in the record to support the conclusion that Bulverde possesses the capabilities that would allow it to provide continuous and adequate service to its customers. The Commission's order recognizes that GBRA successfully operates five water treatment plants and has over thirty years' experience providing water to more than 70,000 persons in Texas. At the time of the hearing before the ALJ, GBRA employed 27 water system operators. The ALJ and the Commission found that Bulverde had over $1,000,000 in liquid assets for the fiscal year ending December 31, 2000, and that it had sufficient funds budgeted for its annual water supply contract obligations to GBRA.

There is also substantial evidence that Bulverde is capable of providing safe drinking water and that it has access to an adequate supply of water. *See* Tex. Water Code Ann. § 13.241(a)-(b). The ALJ found a "demonstrated need for service in the area," and concluded that "[i]n the long run, Bulverde's access through GBRA to Canyon Lake water is superior to BexarMet's projected water supplies." The ALJ found—and the Commission agreed—that Bulverde, through its contracts with GBRA for a long-term supply of surface water, could provide the more reliable water supply for the long-term needs of the area. In addition, the ALJ found that "[g]ranting the [certificate] would have a positive effect on Bulverde by helping to assure a long-term water supply to its residents, thereby promoting development, adding to its economic base, and attracting business."

The ALJ also recognized the merits of BexarMet's application, highlighting its experience and capability as a water supplier for over 50 years, with 70,000 accounts and 250 employees. As Chairman Robert J. Huston observed, the Commission had to make a choice between "two competing interests by . . . two quality players." But it cannot be said that the Commission failed

10

to consider the relevant data, or that its decision was arbitrary, capricious, or represented an abuse of discretion. While we recognize that agency action is not without bounds, if the Commission has crystallized the competing interests and drawn rational conclusions from the evidence presented, we can require no more. We find substantial evidence to support the Commission's determinations that Bulverde's certificate application satisfied the regulatory standards and was superior to BexarMet's application.

### *Enforcement*

While it is undisputed that Bulverde, as the certificate holder, is subject to the enforcement of the Commission, BexarMet argues that the Commission is powerless to bring an enforcement action against GBRA. The breadth of the Commission's authority over public water suppliers and retail public utilities, however, also allows it to enforce the statutory standards against GBRA.

The Commission cites water code section 13.411 as its authority to enforce service obligations against GBRA. *Id.* § 13.411(a) (West 2000). Section 13.411(a) empowers the attorney general to bring an action on behalf of the Commission against any retail public utility that violates Chapter 13 of the water code or an act of the Commission adopted under it. *Id.* In any enforcement action against GBRA, section 13.411(a) would work in conjunction with one of the water code provisions that impose obligations on retail public utilities that provide water without a certificate. These sections include section 13.250(c), which prohibits any discontinuance, reduction, or impairment of water service without Commission approval and section 13.250(d), which specifically prohibits a retail public utility that has not been granted a certificate from discontinuing, reducing, or

11

impairing retail water or sewer service without approval of the Commission. *Id.* § 13.250(c)-(d) (West 2000). Additionally, section 13.139 mandates every district that furnishes retail water to provide service, instrumentalities, and facilities that are safe, adequate, efficient, and reasonable. *Id.* § 13.139 (West 2000). The Commission may enforce these statutory obligations through administrative action or civil suits, including suits for injunctive relief. *Id.* § 13.411.

Substantial evidence also supports the Commission's determination that GBRA is contractually obligated to operate the system in compliance with applicable legal standards. The operating agreement between Bulverde and GBRA is "specifically subject to all applicable sections of the Texas Water Code and Commission rules." Additionally, GBRA must comply with all city ordinances concerning the construction of the system and has agreed to provide Bulverde with enough treated water per day to meet the service area's projected needs for 20 years. We therefore disagree with BexarMet's assertion that there are inadequate enforcement mechanisms available to the Commission in these circumstances to ensure a continuous and adequate water supply to Bulverde's service area.

*Regionalization*

BexarMet contends that the Commission erred by not requiring Bulverde, as an applicant, to comply with the Commission's own regionalization rules. It is the policy of the State of Texas to encourage the optimum regional development of systems built for the filtration, treatment, and transmission of water. Tex. Const. art. III, § 49-d(a). This policy, which prevents redundancy and ensures low rates for water service, is codified in the water code and the health and safety code. *See* Tex. Water Code Ann. § 13.241(d); Tex. Health & Safety Code Ann. § 341.0315(b) (West 2001).

12

Section 13.241(d) of the water code states that before the Commission grants a certificate for an area which would require construction of a "physically separate" water system, an applicant must demonstrate that regionalization or consolidation with another retail public utility is not economically feasible. The Commission's own rules implement the policy. 30 Tex. Admin. Code § 291.102(b) (2003).

Substantial evidence supports the Commission's finding that Bulverde's system is not "physically separate." Bulverde's system will be part of the Western Canyon Treated Water Project, a regional treated water supply system that will deliver 10,000 acre-feet of water annually from Canyon Lake to Comal, Kendall and parts of Bexar County. GBRA's Director of Project Development explained that the project draws raw water from Canyon Lake, sends it to a storage unit, treats it, and then distributes it to several systems in the area, including Bulverde. He testified that Bulverde's system is not a stand-alone system because "Bulverde's distribution system will be connected to the [Western Canyon Project]." Additionally, the Commission found that, "having water supplied from a regional provider such as the GBRA's Western Canyon Project should result in economies of scale and thus lower costs to consumers." Because Bulverde's water system is a regional system as contemplated by the statutory scheme, Bulverde's application met the requirements of the water code.

In its final issue, BexarMet argues that its motion to remand was improperly denied by the district court. Because the district court did not abuse its discretion in failing to remand the case to allow BexarMet to present additional evidence, we disagree. Section 2001.175(c) of the Administrative Procedure Act allows a party in an appeal of an agency decision to apply to the court to present additional evidence. Tex. Gov't Code Ann. § 2001.175(c) (West 2000). However, the party

13

must demonstrate to the court's satisfaction that the additional evidence is material and that there were good reasons for failing to present it in the proceeding before the agency. *Id.* In the instant case, the evidence in question is neither material nor new, as it was presented in the contested hearing and was considered by the Commission before Bulverde's application for a certificate was approved.

## CONCLUSION

We agree with the district court that the Commission acted within its authority when it granted a certificate to Bulverde. We overrule the issues presented by BexarMet and affirm the judgment of the district court.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Waldrop

Affirmed

Filed:   October 20, 2005

14