TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00183-CV






Michael Keith Hahn, Appellant


v.


Railroad Commission of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. D-1-GN-06-000479, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 In November 2001, Core E&P Corp. filed a P-5, an "organization report" required
from companies seeking to perform operations within the Railroad Commission's jurisdiction, see
Tex. Nat. Res. Code Ann. § 91.142 (West Supp. 2008), listing appellant Hahn as its president. In
December 2001, Core filed documentation showing that Hahn owned 100% of Core's stock. In
May 2002, a receiver was appointed to manage Core's assets; in late May, Hahn resigned as
president; and in June 2002, Core entered into bankruptcy and a trustee was appointed. 
On September 22, 2003, the Commission signed an order finding that Core had violated statewide
Commission rules: (1) on July 1, 2002, Core's P-5 became delinquent (1) and was still delinquent on
September 22, 2003, the date of the Commission's order; (2) two wells, in which Core had claimed
a lease interest beginning January 1, 2002, had not been properly plugged, resulting in likely
contamination of groundwater; and (3) required signs were missing from the two lease sites. Hahn
maintained ownership of all of Core's stock until February 2005, when he surrendered or donated
his stock to the bankruptcy trustee.

 In December 2003, Preferred Pipeline attempted to file its P-5 with the Commission,
but the Commission refused to accept it because Hahn owns Preferred Pipeline, and the natural
resources code bars the Commission from accepting a P-5 from a company owned or controlled by
someone who within the previous seven years owned or controlled a company found to have violated
Commission rules. See id. § 91.114(a) (West Supp. 2008). Hahn filed a motion asking the
Commission to remove his permitting disqualifications and to remove his name from Core's P-5. 
Following a hearing, the hearing examiner issued a proposal for decision (PFD) recommending that
the Commission deny Hahn's requests. The Commission adopted the PFD and entered a final order
denying both of Hahn's requests. Hahn sought judicial review in the trial court, which affirmed the
Commission's order. We affirm the trial court's final judgment.


Standard of Review

 If the law provides for judicial review of an agency decision but does not specify the
scope of review, the substantial evidence rule applies. Tex. Gov't Code Ann. § 2001.174
(West 2008). In reviewing an agency decision under the substantial evidence standard, we presume
that the order is valid and supported by substantial evidence, and the complaining party has the
burden of showing otherwise. Sanchez v. Texas State Bd. of Med. Exam'rs, 229 S.W.3d 498, 510
(Tex. App.--Austin 2007, no pet.). "Construction of a statute by the administrative agency charged
with its enforcement is entitled to serious consideration, so long as the construction is reasonable and
does not contradict the plain language of the statute." Tarrant Appraisal Dist. v. Moore, 845 S.W.2d
820, 823 (Tex. 1993); see Dodd v. Meno, 870 S.W.2d 4, 7 (Tex. 1994); Bexar Metro. Water
Dist. v. Texas Comm'n on Envtl. Quality, 185 S.W.3d 546, 550 (Tex. App.--Austin 2006,
pet. denied); Beyer v. Employees Ret. Sys., 808 S.W.2d 622, 628 n.4 (Tex. App.--Austin 1991,
writ denied) (courts ordinarily uphold construction placed on statute by agency charged with
statute's administration, if statute is uncertain and construction is reasonable; deference to
agency's construction is "founded upon the theory that the agency likely has superior knowledge of
the subject matter involved and superior experience in dealing with practical problems raised by the
statute"). We give great weight to the agency's interpretation of its own rules and regulations,
although such interpretation is not binding on this Court, and limit our consideration to whether the
interpretation is plainly erroneous or inconsistent with the language of the rules. Public Util.
Comm'n v. Gulf States Utils. Co., 809 S.W.2d 201, 207 (Tex. 1991); Bexar Metro. Water Dist.,
185 S.W.3d at 550-51. "The agency responsible for regulating an industry must be afforded
sufficient flexibility to determine and carry out its clear legislative mandate." Bexar Metro. Water
Dist., 185 S.W.3d at 551.

 Section 91.114 of the natural resources code provides that the Commission may not
accept a P-5 from an organization if "a person who holds a position of ownership or control in the
organization has, within the seven years preceding the date on which the report, application, or
certificate is filed, held a position of ownership or control in another organization and during that
period of ownership or control the other organization violated a statute or commission rule, order,
license, permit, or certificate that relates to safety or the prevention or control of pollution." 
Tex. Nat. Res. Code Ann. § 91.114(a)(2). A person holds a position of ownership or control if he
is the company's officer, director, general partner, or trustee, the owner of a sole proprietorship, or
owns "at least 25 percent of a beneficial interest" in the company. Id. § 91.114(c)(1).


Did Hahn Have Ownership Of Core E&P?

 In his first issue, Hahn contends that section 91.114 should not apply to him because
he did not have ownership or control of Core at the time Core violated the Commission's rules. The
determinative issue is whether Hahn's ownership of 100% of Core's stock at the time Core was
found to have violated the rules amounts to "ownership or control" under the natural resources code. 
The answer to that question depends on whether ownership of Core's stock equates to ownership of
a beneficial interest. See id. Hahn insists that ownership of stock is not the same as ownership of
a beneficial interest, while the Commission asserts that the phrase "beneficial interest" should be
read more broadly. Hahn argues that he was not in a position of control over Core at the time of the
violations, and the Commission concedes that Hahn did not have control over Core. (2) That, however,
is not the issue. Section 91.114 applies to someone who has control or ownership of a company
found to be in violation of Commission rules. We hold that Hahn's ownership of 100% of Core's
stock amounts to ownership of a beneficial interest in the company.

 Until 1997, the natural resources code defined someone who has ownership or control
as an officer, director, general partner, designated trustee of the organization, owner of a sole
proprietorship, or "the owner of more than a 25 percent ownership interest." Act of May 2, 1997,
75th Leg., R.S., ch. 121, § 1, 1997 Tex. Gen. Laws 231, 231-32 (emphasis added). In 1997, the
legislature amended section 91.114(c) to define someone with ownership or control as a company's
officer, director, general partner, or trustee, the owner of a sole proprietorship, or someone who owns
"at least 25 percent of the beneficial interest" in the company. Id. (emphasis added) (codified at
Tex. Nat. Res. Code Ann. § 91.114(c)(1)). The legislature observed that the amendments were
necessary because the statute as originally enacted "is not flexible and is not effective against
violators." House Committee on Energy Resources, Bill Analysis, Tex. S.B. 639, 75th Leg., R.S.
(1997). The bill analyses state that the change in the definition of "ownership or control" to address
a "beneficial" interest rather than an "ownership" interest:


[p]rovides that regardless of whether the person's name appears or is required to
appear on the organization report . . ., a person holds a position of ownership or
control in an organization if, among other options, the person is the owner of at least,
rather than more than, 25 percent of the beneficial, rather than ownership, interest in
the organization; or the person has been determined by a final judgment or final
administrative order to have exerted actual control of the organization.


Id.; see Senate Committee on Natural Resources, Bill Analysis, Tex. C.S.S.B. 639, 75th Leg., R.S.
(1997) (providing same explanation). The record also includes notes by the Commission related to
the bill analyses in which the Commission observed that the new definition of "ownership or
control" "slightly expands the persons within the definition of 'position of ownership or control' to
encompass situations where the P-5 officers are found to be fronts for the real party in interest." 

 Hahn essentially argues that the current definition of ownership or control
encompasses those who have actual control over a company's operation or an indirect or equitable
interest in the company, not to those who have actual ownership of the corporation itself. For
support, he points to legal definitions in Black's Law Dictionary of "beneficial interest," "beneficial
owner," "ownership," and the like. It is true that Black's defines "beneficial interest" as a "right or
expectancy in something . . . as opposed to legal title." Black's Law Dictionary 149 (7th ed. 1999). 
However, Webster's Dictionary defines "beneficial" as "conferring benefits" or "receiving or
entitling one to have or receive . . . advantage, use, or benefit." Webster's Third New Int'l
Dictionary 203 (1986); see also American Heritage Dictionary 123 (1973) (defining beneficial as
"[r]eceiving or having the right to receive proceeds or other advantages"). 

 More importantly, although there are cases in which a person is observed to have a
beneficial interest in a company while a trustee maintains corporate shares on the interest-holder's
behalf, see, e.g., Cortez v. Cortez, 457 S.W.2d 131, 131-32 (Tex. Civ. App.--San Antonio 1970,
no writ); Coleman v. Kettering, 289 S.W.2d 953, 956 (Tex. Civ. App.--Galveston 1956, no writ);
Eardley v. Eardley, 253 S.W.2d 69, 71 (Tex. Civ. App.--San Antonio 1952, no writ), many other
cases refer to a shareholder or stockholder as having a beneficial interest in a company. See
McAlister v. Eclipse Oil Co., 98 S.W.2d 171, 176 (Tex. 1936) ("[S]trictly speaking, the ownership
of the stock does not carry with it the equitable title to the corporate property. This simply means,
however, that the stockholders have no right to require the corporation to convey to them the legal
title to the corporate property. In a larger or real sense the stockholders of a corporation are the
beneficial owners of its corporate properties."); Automobile Mortgage Co. v. Ayub, 266 S.W. 134,
135-36 (Tex. 1924) (stating that stockholder is beneficial owner of corporate assets and does not
have direct interest in corporate property; while company is operating, company has title of corporate
property; stockholder has equitable right to corporate assets if company ceases to operate and assets
remain after creditors are satisfied); McClory v. Schneider, 51 S.W.2d 738, 741-42 (Tex. Civ.
App.--Amarillo 1932, writ dism'd w.o.j.) (stockholder "owns no part of the capital, and is not the
owner nor entitled to the possession of any definite portion of its property or assets"; stock purchaser
does not acquire title to corporate property but simply acquires "beneficial interest" in company);
see also Humble Oil & Ref. Co. v. Blankenburg, 235 S.W.2d 891, 894 (Tex. 1951) ("As the owner
of 90 shares of the stock petitioner is the beneficial owner of its proportionate part of the
corporation's assets and thus is the beneficial owner of an undivided interest in the property for
which it sues."). Finally, the Commission's rules define "owning or controlling an organization" to
include officers, directors, general partners, sole proprietors, or trustees, someone who has been
determined by final judgment or administrative order to have exercised control, or "owners of more
than 25% ownership interest" in the company. 16 Tex. Admin. Code § 3.78(a)(8) (2009).

 Hahn argues that he did not have a "beneficial interest" in Core when he owned 100%
of Core's 1,000 shares of stock, but that he would have had a beneficial interest if he had owned a
portion of a company that owned Core stock. It would defy logic for us to agree that Hahn had
"ownership" of Core if he owned an indirect interest but not when he personally owned all of Core's
stock. The 1997 amendment was intended, as Hahn points out, to allow the Commission to be more
effective and flexible in stopping rule violations. We agree with the hearing examiner's observation
that Hahn's interpretation "would operate as a greater handicap to the Commission than the pre-1997
version," "is the narrowest possible interpretation of the statutory language, and . . . would severely
restrict the Commission's efforts to deny permits to non-compliant operators." Hahn's interpretation
would result in the Commission being able to penalize only a small subset of interest-holders and
would exclude those with outright ownership from enforcement.

 We hold that substantial evidence supports the Commission's determination that
Hahn was a person who held a position of ownership of Core at the time Core was found to be
in violation of the Commission's statewide rules. The Commission's interpretation of
section 91.114(c) is not unreasonable or illogical and is in keeping with the legislative intent behind
the 1997 amendments to make section 91.114 more flexible and effective. We overrule Hahn's
first issue.


Should The Commission Remove Hahn's Name From Core's P-5?

 In his second issue, Hahn contends that the Commission's refusal to remove his name
from Core's P-5 is arbitrary and not supported by the evidence. We disagree. Hahn was not an
officer of Core at the time of the rules violations. However, he owned 100% of Core's stock, which
he held until February 2005, more than two years after the Commission's final order. 
Section 91.142(a)(5) requires a company performing operations within the Commission's
jurisdiction to file an annual P-5 report naming all officers and directors. Tex. Nat. Res. Code
Ann. § 91.142(a)(5) (West Supp. 2008). The Commission's rules, which go into more detail about
the contents and form of P-5 reports, require a company's P-5 to name "each officer, director,
general partner, owner of more than 25% ownership interest, or trustee." 16 Tex. Admin. Code
§ 3.1(a)(4) (2009) (emphasis added). Hahn was president of Core in December 2001, when the last
complying P-5 apparently was filed, and although he resigned from a leadership position in
May 2002, he retained 100% ownership of Core's stock until more than two years after the
Commission determined Core had violated statewide rules. In fact, at the time he filed his request
with the Commission asking to be removed from Core's P-5, he still owned Core's stock. Hahn has
not shown that the Commission's decision not to remove his name from Core's P-5 was arbitrary,
unsupported by substantial evidence, or in violation of any statutes or rules. We overrule Hahn's
second issue.

 

Conclusion

 Having overruled Hahn's two issues on appeal, we affirm the trial court's judgment
affirming the Commission's order.


 __________________________________________

 David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: July 30, 2009
1. The Commission's rules require an organization to refile its P-5 organization report
annually, according to a schedule assigned by the Commission, as well as within fifteen days after
a change in any information required to be in the report. 16 Tex. Admin. Code § 3.1(a)(7) (2009).
2. Hahn also notes that in March 2004, the bankruptcy court presiding over Core's bankruptcy
proceeding signed an order finding that after June 20, 2002, Hahn was "not responsible for the
corporate affairs of Core, [was] not in control of the corporate assets of Core, never executed actual
control over Core, could not assume such control and [was] unable and without authority to respond
to any actions solely against Core." Hahn argues that the bankruptcy order "excludes the application
of § 91.114(c)(2) to Hahn," and that the Commission "is precluded by law from re-litigating" the
bankruptcy court's findings. However, the question of control is distinct from ownership, and the
bankruptcy order, assuming it has any applicability in this proceeding, addresses only whether Hahn
had control over Core and does not address his ownership of Core stock.