TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-05-00411-CV






Nathan Wayne Stark, Appellant


v.


Mike Geeslin, Commissioner of Insurance, and Texas Department

of Insurance, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. GN403869, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING





O P I N I O N




 Nathan Wayne Stark appeals from the district court judgment affirming the final order
of the Commissioner of the Texas Department of Insurance (1) denying Stark's application to acquire
Fidelity First Insurance Company of Dallas. In four issues, Stark complains that the Commissioner's
order violates due process; exceeds the Commissioner's authority under section 823.157 of the
insurance code; lacks evidentiary support; and improperly finds that Stark's application failed to
meet the regulatory standards for approval. Finding no due process violation and concluding that
the Commissioner acted within his statutory authority and that his decision was supported by
substantial evidence, we affirm the judgment of the district court.

FACTUAL AND PROCEDURAL BACKGROUND


 On July 11, 2003, Stark submitted a Form A application with the Texas Department
of Insurance seeking approval to purchase Fidelity First Insurance Company of Dallas. In the cover
letter submitted with his application, Stark acknowledged that his Form A application was
incomplete, and he promised to submit additional documentation under separate cover. Stark's cover
letter stated:


We believe this to be a completed Form A except for the most recent audited
financial statement for Mr. Stark which will be provided as a supplement under
separate cover in approximately one week. In addition, a few of the biographical
affidavits and fingerprint cards will also be provided under separate cover within a
few days.



 When the Department received Stark's application, it was assigned to the
Commissioner's staff for review. Staff identified several areas of concern and sent four letters to
Stark requesting additional information. These letters were dated July 18, September 18, October
16, and November 25, 2003. Although Stark responded to each of these requests, his responses did
not provide full and complete information requested by the Commissioner regarding Stark's Form
A application. Stark's application proposed using First Fidelity Risk Managers, Inc., as managing
general agent for Fidelity First. But the documentation submitted by Stark revealed that First
Fidelity Risk Managers, Inc., was not licensed to do business in Texas, or any other state. 
Additionally, when the Commissioner requested updated financial information from Stark to
determine the source of cash for Stark's purchase of Fidelity First, the answers Stark provided were

confusing. First, Stark said that he would fund the purchase out of his personal funds. But later,
Stark said that one of his subsidiaries, SkilStaf International, Inc., would provide the purchase money
funds to acquire Fidelity First. Based on the financial statements and other information provided by
Stark, however, the Commissioner concluded that SkilStaf International, Inc., was financially
incapable of providing Stark with a purchase money loan. The Commissioner also inquired about
Stark's proposed plan for reinsurance, (2) but Stark failed to provide a commitment letter from a
reinsurer.

 Even after the Commissioner's four requests for additional information, Stark failed
to provide sufficient information to complete his Form A application. As of December 3, 2003, the
Commissioner still had not received the proposed policy forms to be used by Fidelity First or the
loan agreement from Stark. Accordingly, on December 16, 2003, the Commissioner issued Official
Order No. 03-1247 denying Stark's application.

 Stark timely requested a hearing on the denial of his application, which the
Commissioner referred to the State Office of Administrative Hearings. See Tex. Ins. Code Ann.
§ 823.157 (West Supp. 2005). A hearing was convened before an administrative law judge on May
5, 2004. The ALJ recommended denial of Stark's application on the grounds that Stark had failed
to meet the burden of proving, by a preponderance of evidence, that his Form A application should
have been approved and that Stark failed to provide all of the information regarding his Form A
application as required by the Commissioner's rules. See 28 Tex. Admin. Code §§ 7.205, .209
(2006). The Commissioner adopted this recommendation and issued a final order denying Stark's
application on November 1, 2004.

 Stark filed a motion for rehearing, which was overruled by operation of law. Stark
then sought judicial review in district court. The district court granted judgment affirming the
Commissioner's order. Stark appeals the district court's judgment.


DISCUSSION


The Controversy

 This appeal concerns the Commissioner's construction of section 823.157 of the
Texas Insurance Code regarding the purchase of a domestic insurance company. See Tex. Ins. Code
Ann. § 823.157. In four issues, Stark complains that the Commissioner's final order (1) violates due
process; (2) exceeds the Commissioner's jurisdiction; (3) is not supported by a preponderance of
evidence; and (4) that the testimony and record evidence establish that his application met all of the
regulatory standards for approval. The Commissioner responds that neither due process nor the plain
language of section 823.157 requires the Commissioner to provide notice or a hearing before taking
adverse administrative action on Stark's application. The Commissioner further responds that he
acted entirely within the scope of his jurisdiction under Chapter 823 of the Texas Insurance Code,
and his final order was supported by substantial evidence.


Standard of Review

 The Commissioner's action is subject to judicial review under the substantial
evidence rule. Tex. Ins. Code Ann. §§ 36.201-.203 (West Supp. 2005); Tex. Gov't Code Ann.
§ 2001.174 (West 2000). Under substantial evidence review, we may affirm the agency's decision
in whole or in part, or we may reverse the agency's decision if we determine that substantial rights
of the appellant have been prejudiced because the agency's decision violates the constitution or a
statute; exceeds the agency's statutory authority; was made through unlawful procedure; or, was
affected by other error of law. Tex. Gov't Code § 2001.174. When conducting a substantial
evidence review, we must first determine whether the evidence as a whole is such that reasonable
minds could have reached the conclusion the agency must have reached in order to take the action
in dispute. Texas State Bd. of Dental Exam'rs v. Sizemore, 759 S.W.2d 114, 116 (Tex. 1998). The
test is not whether the agency reached the correct conclusion, but whether some reasonable basis
exists in the record for the agency's action. Texas Health Facilities Comm'n v. Charter
Medical-Dallas, Inc., 665 S.W.2d 446, 452 (Tex. 1984). In determining whether there is substantial
evidence to support the agency's decision, we may not substitute our judgment as to the weight of
the evidence on questions committed to agency discretion. Id. We presume that the agency's order
is supported by substantial evidence, and the challenging party bears the burden to demonstrate
otherwise. Id. at 453. So long as there is a reasonable basis for the agency's order in the record, we
must uphold the agency's order. Id. at 452.


Statutory changes

 We note at the outset that section 823.157 of the insurance code--the statutory
provision at issue in this appeal--has been amended and was recently codified as part of the
legislature's ongoing process to re-organize Texas statutes. Prior to 2001, section 823.157 appeared
as article 21.49-1, section 5(c)(1), of the insurance code. (3) Article 21.49-1, section 5(c)(1), provided
that "[t]he commissioner shall approve any acquisition or control referred to in Subsection (a)
unless, after a public hearing thereon, he finds that" the statutory requirements are not met. (4) During
the 2001 legislative session, the legislature amended article 21.49-1, section 5(c)(1), to read:


The commissioner shall approve or deny any acquisition or change of control referred
to in Subsection (a) not later than the 60th day after the date the statement required
by that subsection is filed. The 60-day period may be waived by the person filing the
statement and the domestic insurer. On request of either the person filing the
statement or the domestic insurer, the commissioner shall hold a public hearing on
a denial . . . . (5)



 There appears to be some confusion on Stark's part as to whether this 2001
amendment reflected a substantive statutory change or was merely the result of the legislature's
continuing recodification process. We observe, however, that the 2001 legislature enacted this
substantive amendment to article 21.49-1 (6) and also codified the pre-amendment version into section
823.157 of the insurance code. (7) Then, in 2003, the legislature enacted a conforming amendment to
section 823.157 to reflect the substantive change originally enacted in 2001. (8)


Due process

 In his first point of error, Stark complains that due process required the Commissioner
to provide notice and a hearing on Stark's Form A application prior to taking any administrative
action on the application. We disagree.

 The United States Constitution guarantees that no person shall be deprived of life,
liberty, or property without due process of law. U.S. Const. amend XIV, § 1. The Texas
Constitution guarantees that "[n]o citizen of this State shall be deprived of life, liberty, property,
privileges or immunities . . . except by the due course of the law of the land." Tex. Const. art. 1,
§ 19. The Texas Supreme Court has found no meaningful difference between the federal
Constitution's guarantee of due process and the Texas Constitution's guarantee of due course of law. 
University of Tex. Med. Sch. v. Than, 901 S.W.2d 926, 929 (Tex. 1995). Thus, Texas courts have
traditionally followed contemporary federal pronouncements on procedural due process issues. Id.
(citing Mellinger v. City of Houston, 3 S.W. 249, 252-53 (Tex. 1887)); see also Spring Branch
Indep. Sch. Dist. v. Stamos, 695 S.W.2d 556, 560-61 (Tex. 1985); Tarrant County v. Ashmore, 635
S.W.2d 417, 422-23 (Tex. 1982). Although we are not bound by federal due process jurisprudence,
we consider federal decisions involving procedural due process to be persuasive authority when
considering Texas's due course of law guarantee. Than, 901 S.W.2d at 929.

 Our review of Stark's due process claim requires a two-part analysis. We must first
determine whether Stark has asserted a liberty or property interest entitled to procedural due process
protection. If so, we must determine what process is due. See Board of Regents of State Colleges
v. Roth, 408 U.S. 564, 569-70 (1972); Collins v. Texas Natural Res. Conservation Comm'n, 94
S.W.3d 876, 883 (Tex. App.--Austin 2002, no. pet.).

 The parties do not dispute that due process required the Commissioner to provide
notice and a hearing on Stark's Form A application to acquire Fidelity First. The dispute centers,
instead, on the timing of the hearing required. Thus, the question of whether Stark has a protected
liberty or property interest in the State's processing of his application to purchase Fidelity First is
not before us, and we consider only whether the hearing held by the Commissioner satisfies the
requirements of due process.

 In the context of administrative proceedings, the Supreme Court has long held that
due process does not require a hearing at any particular stage so long as the requisite hearing is held
before the final administrative order becomes effective. Ewing v. Mytinger & Casselberry, Inc., 339
U.S. 594, 598 (1950) (collecting cases); see also Lone Star Greyhound Park, Inc. v. Texas Racing
Comm'n, 863 S.W.2d 742 (Tex. App.--Austin 1993, writ denied). Unlike some legal rules, due
process "is not a technical conception with a fixed content unrelated to time, place and
circumstances." Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Cafeteria Workers v.
McElroy, 367 U.S. 886, 895 (1961)). Due process is flexible and calls only for those procedural
protections demanded by the particular circumstances. Morrissey v. Brewer, 408 U.S. 471, 481
(1972).

 Stark does not challenge the adequacy of the hearing provided by the Commissioner. 
The question here is solely one of timing. This case thus presents the same issue considered by the
Supreme Court in Mathews v. Eldridge, namely "the extent to which due process requires an
evidentiary hearing prior to the deprivation of some type of property interest even if such a hearing
is provided thereafter." 424 U.S. at 333; see also Dixon v. Love, 431 U.S. 105, 112 (1977)
(considering whether due process requires evidentiary hearing prior to the state's discretionary action
of suspending or revoking a driver's license). We therefore apply the factors considered by the
Supreme Court in Mathews:


Identification of the specific dictates of due process generally requires consideration
of three distinct factors: first, the private interest that will be affected by the official
action; second, the risk of an erroneous deprivation of such interest through the
procedures used, and probable value, if any, of additional or substitute procedural
safeguards; and finally, the Government's interest, including the function involved
and the fiscal and administrative burdens that the additional or substitute procedural
requirement would entail.



Mathews, 424 U.S. at 335.

 The private interest at issue here is the approval of Stark's application to purchase
Fidelity First. Although we recognize that Stark may not be made entirely whole if his application
to purchase Fidelity First is later approved after an initial denial, we conclude that the
Commissioner's denial of Stark's application to purchase a domestic insurance company is not the
sort of deprivation considered by the Supreme Court in Mathews or Dixon that would require a
departure "from the ordinary principle . . . that something less than an evidentiary hearing is
sufficient prior to adverse administrative action." See Mathews, 424 U.S. at 343; Dixon, 431 U.S.
at 113 (citing Goldberg v. Kelly, 397 U.S. 254, 264 (1970)).

 We next consider the risk of an erroneous deprivation and the probable value, if any,
of additional procedural safeguards. Id. at 335. Essential to our evaluation of the administrative
process is the nature of the relevant inquiry. Id. at 343. In determining whether to grant or deny
Stark's Form A application, the Commissioner must consider the financial stability and expertise of
the acquiring entity as well as the financial and regulatory impact the acquisition will have on the
domestic insurance company. See Tex. Ins. Code Ann. § 823.157(b). In short, the statute requires
the Commissioner to conduct a financial assessment of the proposed transaction based upon
information submitted by the applicant--in this case, Stark. See id.

 Like the medical assessment required in Mathews, the financial assessment required
of the Commissioner is "a more sharply focused and easily documented decision." See 424 U.S. at
343. In most cases, the Commissioner's decision will turn upon routine or standard information and
financial reports submitted by the applicant as part of the Form A application itself. See Tex. Ins.
Code Ann. §§ 823.154, .157 (West Supp. 2005); see also 28 Tex. Admin. Code §§ 7.205, .209. 
Under these circumstances, issues of credibility and veracity will not be a critical factor in the
Commissioner's financial assessment and ultimate decisionmaking process. Compare Richardson
v. Perales, 402 U.S. 389, 404 (1971) (recognizing the "reliability and probative worth of written
medical reports"), with Goldberg, 397 U.S. at 269 (finding that written submissions provide an
unsatisfactory basis for decisions that turn upon issues of witness credibility and veracity). In this
context, we agree with the Supreme Court that the potential value of an evidentiary hearing is
substantially lessened. See Mathews, 424 U.S. at 344-45.

 The record in this case demonstrates that Stark had ample opportunity to submit all
of the necessary information to the Commissioner before the Commissioner issued the first official
order denying Stark's application. Stark submitted his Form A application to the Commissioner in
July 2003. The Commissioner's rules required Stark to submit detailed biographical and financial
information, as well as a proposed business and operational plan for the domestic insurer, as part of
his Form A application. See 28 Tex. Admin. Code § 7.205. The Commissioner requested additional
information and written documentation from Stark on four separate occasions, and Stark responded
to each of these requests. Thus, it is clear that the administrative process employed by the
Commissioner in considering whether to approve Stark's acquisition of Fidelity First was controlled
in large part by the written submissions provided by Stark himself.

 There is no concern here that the written submissions provided by Stark would be an
ineffective means of communicating his case to the decisionmaker. In contrast to the welfare
recipients in Goldberg, persons like Stark who seek to acquire a domestic insurance company will
likely have both the "educational attainment necessary to write effectively" and the ability to afford
professional assistance. See 327 U.S. at 269. In this case, Stark was represented by counsel from
the date he originally submitted his Form A application to the Commissioner to the date of the
Commissioner's final order and throughout his appeals. Most, if not all, of the information provided
in Stark's Form A application and his supplemental responses to the Commissioner was prepared
by counsel or someone with the financial expertise necessary to address the Commissioner's
inquiries. Given these circumstances, we conclude that the risk of an erroneous deprivation in the
absence of a prior evidentiary hearing is minimal, and the probable value, if any, of additional or
substitute procedural safeguards is negligible at best.

 In determining the appropriate process due in this context, the last factor in our
analysis is the public interest. See Mathews, 424 U.S. at 335. This factor includes both fiscal and
administrative burdens, as well as other costs associated with requiring, as a matter of constitutional
right, an evidentiary hearing prior to the Commissioner's initial decision on a Form A application. 
See id. at 347. The most obvious burden would be the incremental cost and expense of providing
each applicant with an evidentiary hearing prior to the Commissioner's initial action on an
application. But this increased burden would not necessarily bring with it any added benefit. The
requirement to provide each applicant with an evidentiary hearing prior to administrative action on
a Form A application will create additional delays in the process, which may ultimately outweigh
any added benefit of a prior hearing. Although the actual hearing in this case took only two days,
it was not held until almost a full year after Stark originally submitted his application
to the Commissioner. As the Supreme Court recognized in Mathews, "experience with the
constitutionalizing of government procedures suggests that the ultimate additional cost in terms of
money and administrative burden would not be insubstantial." Id.

 Of course, financial considerations alone do not control the outcome. We must also
consider the government's, and hence the public's, interest in conserving scarce fiscal and
administrative resources. Id. at 348. At some point, the benefit of providing additional safeguards
to individuals potentially affected by adverse administrative action may be outweighed by the cost. 
Id. In striking the appropriate due process balance, we ask when, under our constitutional system,
we must impose judicial-type procedures upon administrative action to ensure fairness. "The judicial
model of an evidentiary hearing is neither a required, nor even the most effective, method of
decisionmaking in all circumstances." Id.

 The legislature has spoken to the appropriate balance in this context. The insurance
code allows the Commissioner to act upon a Form A application without the need for an evidentiary
hearing in every case. See Tex. Ins. Code Ann. § 823.157. Our determination of what due process
is constitutionally required in this case is guided by the legislature's policy choice, reflected in the
2001 statutory amendment to section 823.157, and the Commissioner's rules, which provide an
applicant like Stark with an opportunity to present all of the information necessary for approval of
his Form A application prior to any administrative action. We note that the prescribed procedures
also provide Stark with the right to an evidentiary hearing in the event his application is denied, as
well as subsequent judicial review, before the denial of his application becomes final. See Mathews,
424 U.S. at 349. For these reasons, we conclude that the Commissioner was not required to provide
an evidentiary hearing prior to his initial denial of Stark's Form A application and that the
procedures employed by the Commissioner in evaluating Stark's application fully comported with
due process as required by both the United States and Texas Constitutions. We overrule Stark's first
issue.


60-day period

 In his second issue, Stark complains that the plain language of section 823.157 of the
insurance code required the Commissioner to act upon Stark's Form A application within 60 days
after Stark submitted the application, regardless of whether the application was complete. See Tex.
Ins. Code Ann. § 823.157. Stark further complains that the Commissioner's failure to act within the
60-day period deprived the Commissioner of jurisdiction to take any subsequent action on Stark's
application. The Commissioner responds that Stark's application never triggered the 60-day time
period in section 823.157 because it was never complete and, therefore, was never deemed filed
within the meaning of the statute. See id.; 28 Tex. Admin. Code §§ 7.205, .209. Accordingly, the
Commissioner asserts that he was not required to act upon Stark's Form A application within 60
days and any failure to act within the 60-day period does not deprive him of jurisdiction to take
action at a later date. The Commissioner's denial of Stark's application was based on his
construction of section 823.157. See 28 Tex. Admin. Code §§ 7.205, .209.

 The proper construction of section 823.157 is a question of law, which we review de
novo. See Office of Pub. Util. Counsel v. Public Util. Comm'n, 185 S.W.3d 555, 564 (Tex.
App.--Austin 2006, pet. filed) (op. on reh'g). When construing a statute, our primary objective is
to determine and give effect to the legislature's intent. Texas Water Comm'n v. Brushy Creek Mun.
Util. Dist., 917 S.W.2d 19, 21 (Tex. 1996). We give serious consideration to an administrative
agency's construction of the statute it is charged with enforcing, so long as the agency's construction
is reasonable and consistent with the plain language of the statute. Tarrant Appraisal Dist. v. Moore,
845 S.W.2d 820, 823 (Tex. 1993).

 An administrative agency's interpretation of its own regulations is also entitled to
deference by the courts. Public. Util. Comm'n v. Gulf States Utils. Co., 809 S.W.2d 201, 207 (Tex.
1991). "Our review is limited to determining whether the administrative interpretation is plainly
erroneous or inconsistent with the regulation." Id. We will reverse an administrative action as
arbitrary and capricious only if the agency fails to follow the clear, unambiguous language of its own
regulation. Power Res. Group, Inc. v. Public Util. Comm'n, 73 S.W.3d 354, 357 (Tex.
App.--Austin 2002, pet. denied).

 Section 823.157(a) provides:


The commissioner shall approve or deny an acquisition or change of control for
which a statement is filed under section 823.154 not later than the 60th day after the
date the statement required by that section is filed. The 60-day period may be waived
by the person filing the statement and the domestic insurer. On the request of either
the person filing the statement or the domestic insurer, the commissioner shall hold
a hearing on a denial.



Tex. Ins. Code Ann. § 823.157. Under the Commissioner's interpretation of section 823.157, a Form
A application is not considered to be filed within the meaning of the statute until it is complete, or
until "the date all such material required and sufficient to constitute a full statement has been
provided." 28 Tex. Admin. Code § 7.205(b).

 Stark argues that he filed his Form A application within the meaning of section
823.157 on July 14, 2003, and that the Commissioner's final order recites that Stark's application
was filed on that date. In support of his position, Stark refers us to finding of fact number one in the
Commissioner's final order, which reads "On July 14, 2003, the Applicant filed a Form A
acquisition for control of Fidelity First with the Department."

 The Commissioner responds that even though this finding of fact states that Stark's
application was filed with the Department on July 14, 2003, it means only that the Department
received Stark's application on that date, not that the application was filed within the meaning of
section 823.157. Commissioner witnesses Betty Patterson and Diane Nowak testified that Stark
never submitted required documentation regarding the licensing status of his proposed managing
general agent, a commitment letter from his proposed reinsurer, or the policy forms to be used by
Fidelity First. Nowak also testified that Stark failed to provide sufficient financial information
regarding the nature, source, and amount of the purchase money funds to acquire Fidelity First. 
Thus, Nowak testified that the Commissioner never considered Stark's Form A application to be
filed within the meaning of section 823.157 because it was never complete.

 The legislature has delegated broad authority to the Commissioner to implement
Chapter 823 of the insurance code. Tex. Ins. Code Ann. § 823.012 (West Supp. 2005). The
Commissioner may adopt rules and establish procedures regarding the conducting of business and
proceedings in order to take appropriate actions authorized by statute. Id. The Commissioner has
exercised this authority to adopt rules regarding Form A applications to acquire domestic insurance
companies. See 28 Tex. Admin. Code §§ 7.205, .209. (9) Section 7.205(b) of the Commissioner's
rules states, "No statement required by subsection (a) of this section shall be deemed filed with the
commissioner until on the date all such material required and sufficient to constitute a full statement
has been provided." Id. § 7.205(b). This rule also provides that "[a] failure to file complete and
accurate information in all material respects is grounds for a denial by the commissioner." Id.
§ 7.205(a). Stark's failure to file a complete Form A application was sufficient grounds under the
rule for the Commissioner to deny his application to purchase Fidelity First.

 The Commissioner's rules are a reasonable construction of section 823.157 and do
not contradict the plain language of the statute. We conclude the Commissioner acted within his
discretion to find that Stark's application was incomplete and did not trigger the running of the 60-day time period. To hold otherwise would lead to absurd results and encourage gamesmanship. (10) 
This we decline to do.

 To the extent that Stark contends the Commissioner's rules fail to give effect to the
waiver provision in section 823.157, we reject this contention. The waiver provision remains
operable under the Commissioner's construction of section 823.157 because the parties may still
agree to waive the 60-day period once a complete Form A application has been submitted to the
Commissioner. We overrule Stark's second issue.


Substantial Evidence

 In his two remaining issues, Stark attacks the evidentiary basis of the Commissioner's
final order. Stark complains that the record evidence and testimony establish that Stark's application
met all of the regulatory standards for approval and that the Commissioner's order is not supported
by the evidence.

 The legislature has charged the Commissioner with determining whether Stark's
Form A application met the regulatory standards for approval. See Tex. Ins. Code Ann. § 823.157. 
We review the Commissioner's decision under the substantial evidence rule. See id. §§ 36.201 (an
action subject to judicial review includes a decision, order, or other ruling of the Commissioner);
.203 (judicial review of the Commissioner's action is under the substantial evidence rule in Chapter
2001, Government Code); Tex. Gov't Code Ann. § 2001.174.

 Stark claims that the record evidence and testimony demonstrate that his Form A
application met the regulatory standards for approval. In support of this claim, Stark asserts that the
Oklahoma Department of Insurance approved his Form A application to acquire an Oklahoma
domestic insurance company, and that he was using the same business model here in his Form A
application to acquire Fidelity First. Regardless of whether Stark's proposed business model
complied with Oklahoma law, it was incumbent upon the Commissioner to determine regulatory
compliance with Texas law. Based on the evidence that Stark submitted, the Commissioner
concluded that Stark's application failed to meet the regulatory standards in section 823.157. 
Because this question was committed to the Commissioner's discretion, we decline to substitute our
judgment for that of the Commissioner. See Texas Health Facilities Comm'n, 665 S.W.2d at 452.

 Commissioner witness Diane Nowak testified that Stark failed to provide the
necessary materials to complete his Form A application: Stark failed to provide a commitment letter
from any reinsurer; the managing general agent that Stark proposed to use was not licensed in Texas
or in any other state; and Stark failed to provide the policy forms to be used by Fidelity First. Nowak
also testified that Stark failed to demonstrate the nature, source, and amount of funds or other
consideration that would be used to fund the purchase of Fidelity First. On this record, we conclude
that the Commissioner's order was amply supported by substantial evidence. See id. We overrule
Stark's third and fourth issues.

CONCLUSION


 The plain language of section 823.157 requires notice and a hearing only in the event
the Commissioner first denies a Form A application. See Tex. Ins. Code Ann. § 823.157. We
conclude that this legislative policy choice does not violate due process, and the Commissioner was
not required to provide notice and a hearing prior to taking action on Stark's application to acquire
Fidelity First. We also conclude that the Commissioner acted within his authority under Chapter 823
of the insurance code and that his final order was supported by substantial evidence. Therefore, we
affirm the district court's judgment.



 __________________________________________

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: July 7, 2006

1. We substitute Mike Geeslin, successor to Jose Montemayor as Commissioner of the Texas
Department of Insurance, as the proper party on appeal. See Tex. R. App. P. 7.
2. Reinsurance is insurance of all or part of one insurer's risk by a second insurer, who
accepts the risk in exchange for a percentage of the original premium. Black's Law Dictionary 1290
(7th ed. 1999).
3. Act of May 27, 1987, 70th Leg., R.S., ch. 813, § 2, 1987 Tex. Gen. Laws 2816, 2819
(repealed 2001) (current version at Tex. Ins. Code Ann. § 823.157 (West Supp. 2005)).
4. Id. (emphasis added).
5. Act of May 27, 1987, 70th Leg., R.S., ch. 813, § 2, 1987 Tex. Gen. Laws 2816, 2819,
amended by, Act of May 8, 2001, 77th Leg., R.S., ch. 241, § 2, 2001 Tex. Gen. Laws 450, 450-51.
6. Id.
7. Act of May 22, 2001, 77th Leg., R.S., ch. 1419, § 1, sec. 823.157, 2001 Tex. Gen. Laws
3658, 3702-03.
8. Act of May 20, 2003, 78th Leg., R.S., ch. 1276, § 10A.203, 2003 Tex. Gen. Laws 4158,
4234. We cite to the current version of section 823.157 unless otherwise noted.
9. Although rules 7.205 and 7.209 were adopted prior to the codification and amendment of
section 823.157 in 2001 and 2003, Stark does not challenge the applicability of those rules. 
Therefore, that question is not before us and we do not address it.
10. At oral argument, counsel for the Commissioner argued that, under Stark's interpretation
of the statute, an applicant could trigger the 60-day period by filing one piece of paper regardless of
whether it included all of the information required in a Form A application. See 28 Tex. Admin.
Code § 7.209.